# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | Consolidated Case Nos. 02 C 5608, 02 C 5742, 02 5807, 02 C6085, 02 C 6175, and 02 C 6267 | **DATE** | July 17, 2003 |
| **CASE TITLE** | *BRIAN ASHER , MARC ABRAMS, EDWARD KAMINSKI, BEVERLEY SOODAK, SUSAN SWARTZELL, and EDWARD HELLIER on behalf of themselves and all others similarly situated, v. BAXTER INTERNATIONAL, INC. ET AL.* | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |

(10)■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Defendants' Motion to Dismiss [25-1] is GRANTED.

| | | |
|---|---|---|
| (11) | ☐ | [For further detail see order on the reverse side of the original minute order.] |

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |

number of notices

JUL 2 4 2003

date docketed

docketing deputy initials

Document Number

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN ASHER , MARC ABRAMS,** | ) | |
| **EDWARD KAMINSKI, BEVERLEY** | ) | |
| **SOODAK, SUSAN SWARTZELL, and** | ) | |
| **EDWARD HELLIER on behalf of** | ) | |
| **themselves and all others similarly** | ) | |
| **situated,** | ) | **Hon. Blanche M. Manning** |
| | ) | |
| **Plaintiffs,** | ) | **Case Nos. 02 C 5608, 02 C 5742, 02 5807,** |
| | ) | ~~02 C 6085,~~ 02 C 6175, and 02 C 6267 |
| | ) | **(Consolidated Proceedings)** |
| | ) | |
| | ) | **DOCKETED** |
| **BAXTER INTERNATIONAL, INC.** | ) | |
| **et al.** | ) | JUL 2 4 2003 |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM AND ORDER

This is a consolidated putative class action suit against Defendant Baxter International,

Inc. ("Baxter") and several of its executives (collectively, "the Baxter Defendants" or

"Defendants") alleging that Defendants violated sections 10(b) and 20(a) of the Securities

Exchange Act of 1934 ("the 1934 Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and sections 11 and 15

of the Securities Act of 1933 ("the 1933 Act") (15 U.S.C. §§ 77k and 77o) and the Securities and

Exchange Commission's ("SEC") Rule 10b-5 (17 C.F.R. § 240.10b-5). The present matter

comes before this Court on Defendants' Motion to Dismiss, pursuant to Federal Rules of Civil

Procedure 12(b)(6) and 9(b) and section 21D and E of the 1934 Act (15 U.S.C. §§ 78u-4 and 5)

and section 27A of the 1933 Act (15 U.S.C. §77z-2). For the reasons that follow, the motion is

GRANTED.

# BACKGROUND[1]

## A.    Plaintiffs

Plaintiffs filed this class action on behalf of shareholders who acquired Baxter stock between November 5, 2001 and July 17, 2002 ("the Class Period"). There are two subclasses of Plaintiffs: (1) persons who purchased Baxter stock on the open-market ("the Open-Market Plaintiffs"); and (2) all former shareholders of Fusion Medical Technologies ("Fusion") who exchanged their shares of Fusion for stock in Baxter in connection with Baxter's acquisition of Fusion on May 3, 2002.

## B.    The Baxter Defendants

Baxter, a Delaware corporation with its principal place of business in Deerfield, Illinois, is a diversified multinational healthcare company. It has three principal divisions: (1) the "Medication Delivery Division," which sells products used in the intravenous delivery of medication; (2) the "BioScience Division," which sells pharmaceuticals, vaccines, and blood collection products and services; and (3) the "Renal Division," which sell products used to treat kidney diseases, such as dialysis machines and products. Plaintiffs also named the top executives at Baxter as individual defendants. These individual defendants allegedly participated in and/or knowingly made the alleged misstatements and omissions of material facts. These executives include Baxter's CEO, CFO, CSO, and other high-ranking executives,

---

[1]    The facts in the Background section are taken from the Complaint and Baxter's SEC filings and press releases submitted with Defendants' motion, which although not attached to the Complaint are referred to therein and central to Plaintiffs' claims. The Court may take judicial notice of SEC filings without converting a motion to dismiss to a motion for summary judgment. Stavros v. Exelon, 2003 WL 21372468, at *8 n.8 (N.D. Ill. June 13, 2003). Likewise, the Court may also "examine documents that a defendant attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." Albany Bank & Trust Co. v. Exxon Mobil Corp., 310 F.3d 969, 971 (7th Cir. 2002).

including managers of Baxter's three divisions.

## C.     Alleged Misstatements and Omissions of Material Fact

Plaintiffs allege that at the beginning of the Class Period Baxter was facing numerous business and financial problems, including defective products and a decrease in demand for some of its major products. In an attempt to hide these problems, the Baxter Defendants allegedly made misstatements and omissions of material facts. The motivation behind these misstatements and omissions was to artificially inflate the price of Baxter stock. Defendants had two reasons for keeping Baxter's stock at an artificially inflated price. One, many of the individual plaintiffs allegedly unloaded substantial portions of their Baxter stock at prices which were higher than if the material misstatements and omissions were not made. Two, by artificially inflating the price of its stock, Baxter could acquire Fusion in a stock swap at a lower cost.

To hide the serious financial and business obstacles facing Baxter during the Class Period, Defendants allegedly made forward-looking statements – in the form of press releases, oral statements to the media, and SEC filings – which Plaintiffs contend were misleading because they omitted material facts known to Defendants. (Compl. ¶¶40-48, 50, and 52.)

### 1.     Press Releases

On the first day of the class period, Baxter issued a press release stating that after conducting an investigation into the deaths of patients using one of Baxter's major dialysis products, Baxter would discontinue the product and take a charge of $100-$150 million. (Id. at ¶40.) Nevertheless, Baxter stated that it would "meet its 2002 full-year commitments of sales growth in the low-teens, earnings per share in the mid-teens and operational cash flow of at least

3

$500 million." (Id.) On January 24, 2002, Baxter issued another press release reiterating the November 5, 2001 forecast and predicting "solid growth in 2000" for all three of its divisions. The BioScience Division's sales were expected to increase in the "mid-teens" in 2002 based in large part on the sales of recombinant and smallpox vaccine. (Id. at ¶41.) Additionally, Baxter expected its Medication Delivery Division to have sales growth in the "mid-teens" in 2002 based in part on "its drug delivery and infusion systems portfolios and growth in the oncology business." (Id.) Finally, in spite of the fact that 50 deaths had been linked to one of its products, the Renal Division was looking at an increase in sales "in the high single-digits in 2002." (Id.) On April 18, 2002, Baxter released an additional press release stating that based on performance in the first quarter of 2002, Baxter was "on track to achieve" its "2002 financial commitments" and that the company was "confident that we will achieve our growth commitments this year." (Id. at ¶ 50.)

2. **Oral Statements**

Defendant Kraemer reiterated Baxter's rosy 2002 predictions in two television interviews with the media. (Id. at ¶¶43, 47.) On February 2, 2001, Kraemer stated that he thought "the overall financial dynamic for Baxter is very strong" for 2002. (Id. at 43.) On March 14, 2001, he stated that despite the problems with the Renal Division, he believed that in 2002 "the sales growth would be in the high single digits." (Id. at 47.)

3. **SEC Filings**

The Baxter Defendants incorporated the "2002 financial commitments" into several of its filings with the SEC. On March 13, 2002, Baxter filed its Form 10-K with the SEC. (Id. at ¶46.) The 10-K reiterated the "2002 financial commitments" – sales growth in the

4

low-teens, earnings per share in the mid-teens and operational cash flow of at least $500 million. (Id.) On March 18, 2002 and April 3, 2002, Baxter filed its Registration Statement and Amendment, in connection with the proposed merger with Fusion, both of which incorporated the 2002 projection. (Id. at ¶48.) Finally, on May 30, 2002, Baxter filed its 10-Q, for the quarter ending on March 31, 2002, which also reiterated the "2002 financial commitments." (Id. at ¶52.)

Plaintiffs contend that the above statements were misleading because Defendants omitted material information which they should have reasonably included in the forecasts. (Id. at ¶¶49, 53, and 58.) Plaintiffs allege that it was misleading to state that the Renal Division would experience sales growth in "the high single digits" because the difficulties regarding the product recall and the resulting plant closings and lay-offs were greater than disclosed. The closure of the plants where the defective products were manufactured left Baxter "without any low-cost dialysis products, thereby exposing it to increased competition," resulting in a drop in sales.

Likewise, Plaintiffs allege that it was misleading to predict sales growth in the "high teens" for the BioScience Division without disclosing that the division was experiencing slower than expected growth because: (1) economic instability in Latin America resulted in a drop in sales in that region; (2) a supply glut in certain products led to lower prices and revenues; (3) the division was experiencing manufacturing problems resulting in costs in excess of $10 million; and (4) "overall demand for the division's products was waning." (Id. at ¶49.)

On the last day of the Class Period, Baxter released its second quarter 2002 financial results, which Plaintiffs contend revealed the "true financial condition" of Baxter. According to Plaintiffs, these results "shocked the market" resulting in an eleven dollar ($11) drop in Baxter's stock price ($43 to $32) in one day.

As a result of this alleged fraud and drop in stock price, Plaintiffs brought the instant four count Complaint against Baxter and the individual defendants. Count I alleges that Baxter and Defendants Kraemer and B. Anderson violated section 11 of the 1933 Act (15 U.S.C. § 77k) by issuing the Registration Statement with material misstatements and omissions of material facts. Count III alleges that all Defendants violated section 10(b) and Rule 10b-5 by making material misstatements and omissions of facts in Baxter's SEC filings, press releases, and oral statements to the media. Counts II and III allege that Defendants Kraemer and B. Anderson are "control persons" within the meaning of 18 U.S.C. § 77o and §78t and therefore are liable for the alleged misstatements and omissions of facts.

## STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all facts alleged in the pleadings, construing allegations liberally and viewing them in the light most favorable to the non-moving party. See, e.g., McMath v. City of Gary, 976 F.2d 1026, 1031 (7th Cir. 1992); Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1022 (7th Cir. 1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kunik v. Racine County, Wis., 946 F.2d 1574, 1579 (7th Cir. 1991) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

The court will accept all well-pled factual allegations in the complaint as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.2 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the non-moving party. Craigs, Inc. v. General Electric Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993). However, the

court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992).[2]

## DISCUSSION

The Baxter Defendants have moved to dismiss this action on the grounds that: (I) Plaintiffs failed to allege any misstatement or omission of material fact; (II) the alleged misstatements fall under the "safe harbor" provision of the Private Securities Litigation Reform Act ("PSLRA"); (III) the Complaint does not allege sufficient facts to meet the PSLRA's "scienter" requirement for forward-looking statements; and (IV) Plaintiffs do not have standing. The Court will discuss each of these contentions in turn.

First, however, the Court will briefly discuss the four counts in the Complaint and corresponding statutes which were allegedly violated by the Baxter Defendants. Count I alleges that Baxter and Defendants Kraemer and B. Anderson violated section 11 of the 1933 Act (15 U.S.C. § 77k) by issuing the Registration Statement with material misstatements and omissions of material facts. Count III alleges that all Defendants violated section 10(b) and Rule 10b-5 by making material misstatements and omissions of facts in Baxter's SEC filings, press releases, and oral statements to the media. Counts II and III allege that Defendants Kraemer and B. Anderson are "control persons" within the meaning of 18 U.S.C. § 77o and §78t and therefore are liable for the alleged misstatements and omissions of facts.

Section 10(b) prohibits the use "in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and

---

[2]      In addition to Rule 12(b)(6), this action implicates other legal standards which govern securities fraud cases. The Court will discuss these standards, where applicable, below.

regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, the

SEC promulgated Rule 10b-5 which makes it unlawful for any person:

> (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. Interpreting section 10(b) and Rule 10b-5, the Seventh Circuit requires

that a plaintiff allege that "the defendant (1) made a misstatement or omission, (2) of material

fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which

the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries." In re HealthCare

Compare Corp. Sec. Litig., 75 F.3d 276, 280 (7th Cir.1996).

In contrast to section 10(b), section 11 of the 1933 Act only requires that the plaintiff

prove the defendant made a misstatement or omission of material fact in a registration statement;

the plaintiff need not show scienter or causation. See 15 U.S.C. § 77k(a); Abrams v. Van

Kampen Funds Inc., 2002 WL 1160171, at *5 (N.D. Ill. May 30, 2002).

## I.    Misstatements and Omissions of Material Facts

The Baxter Defendants put forth two arguments in support of their contention that

Plaintiffs have failed to identify any actionable misstatements or omissions of material fact

during the Class Period in either the Registration Statement, SEC filings, press releases, or oral

statements to the media. First, Defendants assert that the alleged misstatements were financial

projections for 2002 (the whole year) and not the second quarter of 2002. Therefore, although

the second quarter 2002 results were below those of 2001, because Defendants did not make any

specific projections for the second quarter, the alleged statements regarding the 2002 year-end

results in the Complaint do not constitute actionable material misstatements. <u>Second</u>, the Baxter Defendants contend that they did not make any omissions of material facts because, assuming they knew of the serious problems with Baxter, they did not have a legal duty to disclose "adverse business developments" or "update the prior projection."

Before determining whether Defendants made an actionable misstatement or omission of material fact or were required to update a prior statement, this Court must first assess whether the alleged statements were "historical statements" or "forward-looking" statements. The Court must first make this determination because different standards govern each type of statement. <u>See</u> <u>Stransky v. Cummins Engine Co.</u>, 51 F.3d 1329, 1331 (7th Cir. 1995); <u>Kaufman v. Motorola</u>, 1999 WL 688780, at *6-7 (N.D. Ill. Apr. 16, 1999) (Williams, J.); <u>Kas v. Caterpillar, Inc.</u>, 815 F. Supp. 1158, 1170 (C.D. Ill. 1992). In determining whether a "forward-looking statement" contained a material misstatement or omission, the court must examine whether the statement "was not made in good faith or was made without a reasonable basis." <u>Stransky</u>, 51 F.3d at 1333 (remanding to district court for a determination of whether "the forward-looking statements . . . were unreasonable in light of the facts known at the time"). In contrast, in the case of a "historical statement," the plaintiff must allege sufficient facts to show that "the statement is either false or misleading because of the omitted information." <u>Kas</u>, 815 F. Supp. at 1170. Similarly, a "duty to correct" arises only "when a company makes a historical statement that, at the time made, the company believed to be true, but as revealed by subsequently discovered information actually was not." <u>Stransky</u>, 51 F.3d at 1333. In the case of a "forward-looking statement," however, "a company has no duty to update . . . merely because changing circumstances have proven them wrong." <u>Id.</u> at 1333 n.9.

9

A "forward-looking" statement is one whose truth or falsity cannot be determined until after the statement has been made. Harris v. Ivax Corp., 182 F.3d 799, 805 (11th Cir. 1999). Forward-looking statements include statements: (1) "containing a projection of revenues" or other financial items; (2) "of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer"; (3) "of future economic performance"; and (4) "of the assumptions underlying or relating" to the aforementioned statements. 15 U.S.C. § 78u-5(i)(1). In contrast, a "historical" statement is a statement which describes the company's past performance – such as the financial results of a prior quarter. Stransky, 51 F.3d at 1331.

Here, the parties dispute whether the alleged statements are "forward-looking" or "historical" statements. After carefully examining the alleged statements, this Court finds that the statements, as detailed below, were forward-looking predictions of future financial growth and therefore, the Court will analyze these statements under the standard for forward-looking statements. The fact that some of the statements contain language phrased in the present-tense does not convert the entire statement into a historical statement. See Harris, 182 F.3d at 807 ("when the factors underlying a projection or economic forecast include both assumptions and statements of known fact . . . the entire list of factors is treated as a forward-looking statement").

As stated above, in determining whether a "forward-looking statement" contained a material misstatement or omission, the court must examine whether the statement "was not made in good faith or was made without a reasonable basis."[3] Stransky, 51 F.3d at 1333. Once a

---

[3] Information is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available." Basic Inc. v. Levinson, 485 U.S. 224, 231-31 (1988).

forward-looking statement is made, if the statement "becomes untrue" because of "subsequent events," as long as the original statement was made in good faith, the speaker does <u>not</u> have "a duty to update" the statement. <u>Id.</u> at 1332. <u>See also</u> <u>Grassi v. Info. Res., Inc.</u>, 63 F.3d 596, 599 (7th Cir. 1995) ("a company has no duty to update forward-looking statements merely because changing circumstances have proven them to be wrong").

When making a forward-looking statement, however, the speaker must "speak the whole truth." <u>Stransky</u>, 51 F.3d at 1331. In other words, a speaker is liable if the statement contains an omission of a known material fact which makes the affirmative statement misleading or false, <u>Kas</u>, 815 F. Supp. at 1171, or "unreasonable." <u>Stransky</u>, 51 F.3d at 1335. A defendant thus may be liable for issuing a future projection of earnings if the defendant "ignored facts seriously undermining the accuracy of the forecast." <u>Good v. Zenith Elecs. Corp.</u>, 751 F. Supp. 1320, 1322 (N.D. Ill. 1990). <u>See also</u> <u>In re Next Level Sys., Inc.</u>, 1999 WL 387446, at *7-8 (N.D. Ill. Mar. 31, 1999). In assessing forward-looking statements, the court must examine them "collectively in the context in which they were made." <u>Lindelow v. Hill</u>, 2001 WL 830956, at *3 (N.D. Ill. July 20, 2001). In short, "disclosure required by the securities laws is measured not by the literal truth, but by the material to accurately inform rather than mislead prospective buyers." <u>Id.</u> <u>See also</u> <u>In re Neopharm, Inc. Sec. Lit.</u>, 2003 WL 262369, at *11 (N.D. Ill. Feb. 7, 2003).

In <u>Kas</u>, 815 F. Supp. at 1161, the shareholders alleged that the defendants violated section 10(b) by making misleading, forward-looking statements. In making predictions about the outlook of the company's future operations, the company disclosed that a foreign subsidiary's sales "could be hurt" and its "profits [were] under considerable pressure" but that the company's overall sales should increase because "only five percent of [the company's] sales"

were generated by the foreign subsidiary. Id. at 1171-74. The court found that these statements were misleading because the company failed to disclose the actual extent of the economic crisis facing its foreign subsidiary. Id. Although the subsidiary accounted for only 5% of the parent's revenue, its profits made up 20% of the parent's total profits. Id. Consequently, in denying the motion to dismiss, the court found that the plaintiff alleged sufficient facts to show that the forward-looking statements were misleading and not made in good faith because they failed to disclose material information known by the company at the time of the statements which if disclosed would have substantially changed the meaning of the predictions. Id.

Similarly, in Good, 751 F. Supp. at 1321, the plaintiffs alleged that the defendants made material misstatements and omissions in a forward-looking statement predicting future profits. The company's 1988 annual report stated that it "expected further profit improvements in 1989." Contrary to this prediction, in the first quarter of 1989, the company reported a $4 million loss, attributed to foreign currency fluctuations. Id. Nevertheless, the company stated that "it still expected profit improvement for the full year." Id. In the second quarter, however, the company reported a $13 million loss, and stated that "while [the company] still expects 1989 to be a profitable year, [it] now had less confidence that [it] would be more profitable in 1989 than 1988." Id. As a result, after the second quarter earnings were released, the price of the company's stock fell. Id.

The plaintiffs subsequently brought a class action suit against the company proposing to represent all persons who bought stock between the time the company made the future predictions with the first quarter earnings and when the true picture was released with the second quarter earnings. Id. The plaintiffs alleged that the company violated section 10(b) and Rule

10b-5 in its first quarter statement by continuing to state that it expected "profit improvements for the full year." Id. The plaintiffs alleged that this prediction was misleading because it did not disclose the fact that the prediction was based upon "an assumption that the dollar would weaken against foreign currency" and that the company did not limit its risk to currency fluctuations by investing in foreign currency options. Id.

Denying the company's motion for summary judgment, the court found that the facts showed that the defendants "may have been in possession or had access to information which, by its omission, rendered their statements false or misleading." Id. at 1322. Therefore, the projections could have violated section 10(b) and Rule 10b-5 because they might have been issued "without a genuine belief or reasonable basis." Id.

Likewise, in In re Next Level Systems, Inc., 1999 WL 387446, at *2, the plaintiffs alleged that the defendant/company made misstatements and omissions of material facts when it made a forward-looking statement that it expected its earnings to grow by 20% in the upcoming year. Denying a motion to dismiss, Judge Williams held that the plaintiffs alleged sufficient facts to show that the defendants "ignored facts seriously undermining the accuracy of [its] forecast." Id. at *7. In reaching this conclusion, the court found that the complaint alleged that when the future prediction was made, the company knew, or should have known, that two of its three business units were experiencing "serious difficulties," including the loss of a major customer. Id. By not disclosing this information, the court found that the company rendered its forecast misleading (thus not made in good faith or with a reasonable basis) and therefore could be liable under section 10(b) and Rule 10b-5. Id.

Here, similar to the above cases, Plaintiffs allege that the Baxter Defendants made

several forward-looking predictions of future financial growth, without disclosing that several of Baxter's divisions were experiencing serious financial and business difficulties. By not releasing this information, which Defendants knew of or should have known of, with its predictions, Plaintiffs allege that the forward looking statements were misleading and not made in good faith or with a reasonable basis.

To determine if Plaintiffs have alleged sufficient facts to plead that Defendants' forward-looking statements omitted material facts, this Court will examine each alleged statement and then determine whether, given what Defendants allegedly knew, the Complaint contains sufficient facts to show that these statements were made without a reasonable basis or not in good faith. In essence, this Court needs to examine the Complaint to see what and when Defendants allegedly knew during the Class Period (November 5, 2001 to July 17, 2002).

In all, the Complaint lists ten forward-looking statements which Plaintiffs contend were misleading because they omitted certain material facts known to Defendants. (Compl. ¶¶40-48, 50, and 52.) The first statement, a press release on November 5, 2002, stated that after conducting an investigation into the deaths of patients using one of Baxter's major dialysis products, Baxter would discontinue this product and take a charge of $100-$150 million. (Id. at ¶40.) Nevertheless, Baxter stated that it would "meet its 2002 full-year commitments of sales growth in the low-teens, earnings per share in the mid-teens and operational cash flow of at least $500 million." (Id.)

On January 24, 2002, Baxter issued another press release reiterating the November 5, 2001 forecast and predicting "solid growth in 2000" for all three of its divisions. The BioScience Division's sales were expected to increase in the "mid-teens" in 2002 based in large

part to the sales of Recombinant and smallpox vaccine. (Id. at ¶41.) Additionally, Baxter

expected its Medication Delivery Division to have sales growth in the "mid-teens" in 2002 based

in part on "its drug delivery and infusion systems portfolios and growth in the oncology

business." (Id.) Finally, in spite of the fact that 50 deaths had been linked to one of its products,

the Renal Division was looking at an increase in sales "in the high single-digits in 2002." (Id.)

On April 18, 2002, Baxter released an additional press release stating that based on

performance in the first quarter of 2002, Baxter was "on track to achieve" its "2002 financial

commitments" and that the company was "confident that we will achieve our growth

commitments this year." (Id. at ¶ 50.)

Defendant Kraemer reiterated Baxter's rosy 2002 predictions in two interviews with

Bloomberg. (Id. at ¶¶43, 47.) On February 2, 2001, Kraemer stated that he thought "the overall

financial dynamic for Baxter is very strong" for 2002. (Id. at 43.) On March 14, 2001, Kraemer

stated that despite the problems with the Renal Division, he believed that in 2002 "the sales

growth would be in the high single digits." (Id. at 47.)

The Baxter Defendants incorporated the "2002 financial commitments" into several

filings with the SEC. On March 13, 2002, Baxter filed its Form 10-K with the SEC. (Id. at ¶46.)

The 10-K reiterated the "2002 financial commitments" – sales growth in the low-teens, earnings

per share in the mid-teens and operational cash flow of at least $500 million. (Id.)

On March 18, 2002 and April 3, 2002, Baxter filed its Registration Statement and Amendment,

in connection with the proposed merger with Fusion, both of which incorporated the 2002

projection. (Id. at ¶48.) Finally, on May 30, 2002, Baxter filed its 10-Q, for the quarter ending

on March 31, 2002, which also reiterated the "2002 financial commitments." (Id. at ¶52.)

Plaintiffs contend that the above forward-looking statements were misleading because Defendants omitted material information which they should have reasonably included in the forecasts. (Id. at ¶¶49, 53, and 58.) For example, Plaintiffs contend that it was misleading to state that the Renal Division would experience sales growth in "the high single digits" because the difficulties regarding the product recall and the resulting plant closings and lay-offs were greater than disclosed. The closure of the plants where the defective products were manufactured left Baxter "without any low-cost dialysis products, thereby exposing it to increased competition," resulting in a drop in sales.

Likewise, Plaintiffs allege that it was misleading to predict sales growth in the "high teens" for the BioScience Division without disclosing that the division was experiencing slower than expected growth because: (1) economic instability in Latin America resulted in a drop in sales in that region; (2) a supply glut in certain products led to lower prices and revenues; (3) the division was experiencing manufacturing problems resulting in costs in excess of $10 million; and (4) "overall demand for the division's products was waning." (Id. at ¶49.)

After carefully reviewing the Complaint and the above statements, this Court finds that Defendants allegedly ignored facts that seriously undermined the accuracy of Baxter's "2002 financial commitments" – sales growth in the low-teens, earnings per share in the mid-teens and operational cash flow of at least $500 million. Consequently, this Court holds that the Complaint alleges sufficient facts to show that Defendants omitted material facts which if disclosed would have significantly altered the accuracy of the 2002 financial commitments, and therefore, have sufficiently alleged that the above forward-looking statements were misleading and not made in good faith or with a reasonable basis.

## II.    Safe Harbor for Cautionary Language

The Baxter Defendants also contend that this action should be dismissed because the forward-looking statements which Plaintiffs base their claims on (e.g., the Registration Statement, the SEC filings, press releases, and oral statements to the media) contained "meaningful cautionary statements" and therefore, fall within the "safe harbor" provision of the PSLRA.[4]

The PSLRA provides a "safe harbor" for statements, "whether written or oral, if and to the extent that – "

> (A) the forward-looking statement is – "identified as a forward-looking statement, and is accompanied by <u>meaningful cautionary statements identifying important factors</u> that could cause actual results to differ materially from those in the forward-looking statement"

15 U.S.C. § 78u-5(c)(1) and 15 U.S.C. § 77z-2(c)(1) (emphasis added).

Although the Seventh Circuit has not specifically interpreted the safe harbor provision, at least two courts in this district and courts outside of this circuit have held that "vague and boilerplate" cautionary statements are not sufficient; "[t]o be effective, the cautionary language 'must be substantive and tailored to the specific future projections, estimates or opinions'" contained in the alleged misleading forward-looking statement. <u>Lindelow</u>, 2001 WL 830956, at *4 (quoting, <u>Harden v. Raffensperger, Hughts & Co., Inc.</u>, 65 F.3d 1392, 1404 (7th Cir. 1995)). <u>Accord In re Next Level Sys., Inc.</u>, 1999 WL 387446, at *8 n.4 ("vague or boilerplate disclaimers . . . will not suffice; instead, the cautionary language must be substantive and tailored to the specific future projections, estimates or opinions that are alleged to be misleading");

---

[4]      As explained above, this Court finds that the "2002 financial commitments" were forward-looking statements.

Hewig v. Vencor, Inc, 251 F.3d 540, 558-59 (6th Cir. 2001) (same); Semerenko v. Cendant

Corp., 223 F.3d 165, 182 (3d Cir. 2000) (same); Harris, 182 F.3d at 807 (same). This

interpretation finds support in the legislative history of the PSLRA, which states that:

> [B]oilerplate warnings will not suffice as meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those projected in the statement. The cautionary statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statement, such as, for example, information about the issuer's business.

> As part of the analysis of what constitutes a meaningful cautionary statement, courts should consider the factors identified in the statements. "Important" factors mean the stated factors identified in the cautionary statement must be relevant to the projection and must be of a nature that the factor or factors could actually affect whether the forward- looking statement is realized.

> The Conference Committee expects that the cautionary statements identify important factors that could cause results to differ materially-but not all factors. Failure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor. The Conference Committee specifies that the cautionary statements identify "important" factors to provide guidance to issuers and not to provide an opportunity for plaintiff counsel to conduct discovery on what factors were known to the issuer at the time the forward-looking statement was made.

> The use of the words "meaningful" and "important factors" are intended to provide a standard for the types of cautionary statements upon which a court may, where appropriate, decide a motion to dismiss, without examining the state of mind of the defendant. The first prong of the safe harbor requires courts to examine only the cautionary statement accompanying the forward-looking statement. Courts should not examine the state of mind of the person making the statement.

H.R. Conf. Rep. No. 104-369, 104th Cong., at 43-44 (1995), 1995 U.S.C.C.A.N. 730, 742-43.[5]

---

[5]      In addition to the above required cautionary language, a number of courts have held that the safe harbor provision is not applicable "when Defendants are aware . . . of facts that render their statements untrue when made." In re Wold Access, Inc. Sec. Lit., 119 F. Supp. 2d 1348, 1357-58 (N.D. Ga. 2000). See also In re Viropharma, Inc., 202 WL 1824914, at *8 (E.D. Pa. April 7, 2003) (a cautionary instruction is not applicable if the defendant was "already aware that the risks he is cautioning against have come to fruition"). This Court, however, is doubtful of the validity of these cases because the Conference Report explicitly instructed that "[c]ourts

In determining whether the defendant has put forth sufficient cautionary language with

its forward-looking statements, courts examine "the total information mix of information

available to investors at the time of the alleged fraudulent statements." Stavros, 2003 WL

21372468, at *8. See also Grossman v. Novell, Inc., 120 F.3d 1112, 1122-23 (10th Cir. 1999) (in

determining whether cautionary language is sufficient, "the relevant inquiry concerns the total

mix of information available to the market at the time of the allegedly fraudulent statement").

In examining the total mix of information, the "cautionary language need not be contained in the

same document as the projection." Stavros, 2003 WL 21372468, at *8.  The court may examine

documents, such as SEC filings, which are specifically referenced in the forward-looking

statement. Id.

Here, Baxter's press releases, SEC filings, and Registration statement identified

the future financial projections as forward-looking statements and contained cautionary language

warning of certain risks associated with the projections. Consequently, this Court will examine

the "total mix" of cautionary statements "available to investors at the time of the alleged"

misstatements and omissions, Stavros, 2003 WL 21372468, at *8, to determine if they were

"substantive and tailored to the specific future projections, estimates or opinions" in the forward-

looking statements.  Lindelow, 2001 WL 830956, at *4.[6]

---

should not examine the state of mind of the person making the statement." H.R. Conf. Rep. No.
104-369, 104th Cong., at 43-44.  Accordingly, this Court will not examine at this point whether
Defendants knew that their statements were false.

[6]      Although not contained in or attached to the Complaint, the Court may, without
converting a motion to dismiss to a motion for summary judgment, take judicial notice of SEC
filings, Stavros, 2003 WL 21372468, at *8 n.8, and "examine documents that a defendant
attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are
central to her claim." Albany Bank & Trust Co., 310 F.3d at 971.

Baxter's press releases contained the following cautionary language with the forward-looking statements:

> This news release contains forward-looking statements that involve risks and uncertainties, including technological advances in the medical field, product demand and market acceptance, the effect of economic conditions, actions of regulatory bodies, the impact of competitive products and pricing, foreign currency exchange rates and other risks detailed in the company's filings with the Securities and Exchange Commission. These forward-looking statements are based on estimates and assumptions made by management of the company and are believed to be reasonable, though are inherently uncertain and difficult to predict. Actual results or experience could differ materially from the forward-looking statements.

(Defs' Exs. B and C.)   Additionally, the November 5, 2002 press release stated that after conducting an investigation into the deaths of patients using one of Baxter's major dialysis products, Baxter would discontinue this product and take a charge of $100-$150 million. (Compl. at ¶40 and Defs' Ex. B.)

> Likewise, Baxter's 2001 Form 10-K included the following cautionary statement:

> Statements throughout this report that are not historical facts are forward-looking statements. These statements are based on the company's current expectations and involve numerous risks and uncertainties. Some of these risks and uncertainties are factors that affect all international businesses, while some are specific to the company and the health care arenas in which it operates.

> Many factors could affect the company's actual results, causing results to differ materially, from those expressed in any such forward looking statements. These factors include, but are not limited to, interest rates; technological advances in the medical field; economic conditions; demand and market acceptance risks for new and existing products, technologies and health care services; the impact of competitive products and pricing; manufacturing capacity; new plant start-ups; global regulatory, trade and tax policies; regulatory, legal or other developments relating to the company's Series A, AF, and AX dialyzers; continued price competition; product development risks, including technological difficulties; ability to enforce patents; actions of regulatory bodies and other government authorities; reimbursement policies of government agencies; commercialization factors; results of product testing; and other factors described elsewhere in this report or in the company's other filings with the Securities and Exchange Commission. Additionally, as discussed in Item 3 – "Legal Proceedings," upon the resolution of certain legal matters, the company may incur charges in excess of

presently established reserves. Any such change could have material adverse effect on the company's results of operations or cash flows in the period in which it is recorded.

Currency fluctuations are also a significant variable for global companies, especially fluctuations in currencies where hedging opportunities are unreasonably expensive or unavailable. If the United States dollar strengthens significantly against mist foreign currencies, the company's ability to realize projected growth rates in its sales and net earnings outside the United States could be negatively impacted.

The company believes that its expectations with respect to forward-looking statements are based upon reasonable assumptions within the bounds of its knowledge of its business operations, but there can be no assurance that the actual results or performance of the company will conform to any future results or performance express or implied by such forward-looking statements.

(Defs' Ex. D.)[7]

Baxter also listed specific "risk factors" in Amendment No. 1 to its Form S-4

Registration Statement, which discussed general factors which could affect the merger of Baxter

and Fusion. (Defs' Ex. G at 15-17.) Form S-4 also contained the following cautionary

language:

This document and the documents incorporated by reference into this document contain forward-looking statements within the "safe harbor" provisions of the [PSLRA] with respect to Baxter's and Fusion's financial condition, results of operations and business and the expected impact of the merger on Baxter's financial performance. Words such as "anticipates", "expects", "intends", "plans", "believes", "seeks", "estimates" and similar expressions indicate forward-looking statements. These statements are based on current expectations and involve numerous risks and uncertainties. These forward-looking statements are not guarantees of future performance and are subject to factors that could cause actual results to differ materially from the results contemplated by the forward-looking statements. These factors include, but are not limited to, interest rates; technological advances in the medical field; economic conditions; demand and market acceptance risks for new and existing products, technologies and health care services; the impact of competitive products and pricing; manufacturing capacity; new plant start-ups; global regulatory, trade and tax policies; regulatory, legal or other developments relating to the company's Series A, AF, and AX dialyzers; continued price competition; product development risks, including technological difficulties; ability to enforce patents;

---

[7] The "Legal Proceedings" mentioned in the 2001 10-K cautionary language did not mention the deaths caused by one of Baxter's dialysis products.

actions of regulatory bodies and other government authorities; reimbursement policies of government agencies; commercialization factors; results of product testing; and other factors described elsewhere in this report or in the company's other filings with the Securities and Exchange Commission. In evaluating the merger, you should carefully consider the discussion of risks and uncertainties in the section entitled "Risk Factors" . . . . Neither Baxter nor Fusion undertakes any obligation to update any forward looking statements.

(Id. at 55-56.)

Lastly, Baxter's 10-Q for the quarter ending on March 31, 2002, also included the

following cautionary language:

The matters discussed above that are not historical facts are forward-looking statements. These statements are based on the company's current expectations and involve numerous risks and uncertainties. Some of these risks and uncertainties are factors that affect all international businesses, while some are specific to the company and the health care arenas in which it operates. Many factors could affect the company's actual results, causing results to differ materially, from those expressed in any such forward looking statements. These factors include, but are not limited to: interest rates; technological advances in the medical field; economic conditions; demand and market acceptance risks for new and existing products, technologies and health care services; the impact of competitive products and pricing; manufacturing capacity; new plant start-ups; global regulatory, trade and tax policies; regulatory, legal or other developments relating to the company's Series A, AF, and AX dialyzers; continued price competition; product development risks, including technological difficulties; ability to enforce patents; actions of regulatory bodies and other government authorities; reimbursement policies of government agencies; commercialization factors; results of product testing; and other factors described elsewhere in this report or in the company's other filings with the Securities and Exchange Commission. Additionally, as discussed in Item 3 – "Legal Proceedings," upon the resolution of certain legal matters, the company may incur charges in excess of presently established reserves. Any such change could have material adverse effect on the company's results of operations or cash flows in the period in which it is recorded.

Currency fluctuations are also a significant variable for global companies, especially fluctuations in currencies where hedging opportunities are unreasonably expensive or unavailable. If the United States dollar strengthens significantly against most foreign currencies, the company's ability to realize projected growth rates in its sales and net earnings outside the United States could be negatively impacted.

Management believes that its expectations with respect to forward-looking statements are based upon reasonable assumptions within the bounds of its knowledge of the company's

operations, but there are no assurances that the actual results or performance of the company will conform to any future results or performance express or implied by such forward-looking statements.

(Defs' Ex. L at 16.)

After carefully examining the "total mix" of the above cautionary language and the information which Plaintiffs contend was omitted from the forward-looking statements, this Court finds that the cautionary disclosures were substantive and sufficiently tailored to the projections contained in the above forward looking statements. Indeed, many of the issues which are addressed in the cautionary statements are the same or closely related to the alleged omissions.

For example, Plaintiffs contend that it was misleading to state that the Renal Division would experience sales growth in "the high single digits" because the difficulties regarding the product recall and the resulting plant closings and lay-offs were greater than disclosed. The closure of the plants where the defective products were manufactured left Baxter "without any low-cost dialysis products, thereby exposing it to increased competition," resulting in a drop in sales. Likewise, Plaintiffs allege that it was misleading to predict sales growth in the "high teens" for the BioScience Division without disclosing that the division was experiencing slower than expected growth because: (1) economic instability in Latin America resulted in a drop in sales in that region; (2) a supply glut in certain products led to lower prices and revenues; (3) the division was experiencing manufacturing problems resulting in costs in excess of $10 million; and (4) "overall demand for the division's products was waning." (Id. at ¶49.)

The cautionary statements specifically warned of many, if not all, of these alleged omissions. For example, Baxter stated that it would have to discontinue the dialyers which were

the suspected cause of at least 50 deaths and would take a charge of $100-$150 million and that "legal or other developments" could arise from this product defect. Baxter also warned that the following factors could affect its forward-looking projects: (1) "demand and market acceptance risks for new and existing products"; (2) "the impact of competitive products and pricing"; (3) "continued price competition"; and (4) foreign currency fluctuations.

Accordingly, this Court finds that the "total mix" of cautionary statements "available to Plaintiffs at the time of the alleged" misstatements and omissions, Stavros, 2003 WL 21372468, at *8, were "substantive and tailored to the specific future projections, estimates or opinions" in the forward-looking statements, Lindelow, 2001 WL 830956, at *4, so as to give a reasonable investor notice of the risks of investing in Baxter and to undertake further investigation into Baxter before investing in its stock.

This conclusion is supported by several cases where courts found that similar cautionary language was sufficiently substantive and tailored to the projections, so as to alert a reasonable investor to the possible dangers which the company was facing with respect to its predicted financial projections. For example, in In re Ati Technologies, Inc., 216 F. Supp. 2d 418, 440-41 (E.D. Pa. 2002), the plaintiffs contended that the company's forecast that profits and revenues would increase 25% for the year were materially false and misleading when made because the defendants failed to disclose information which could have undermined this prediction. Granting a motion to dismiss as to these allegations, the Court found that the following cautionary language was sufficient to put defendants into the "safe harbor":

> This discussion may involve forward-looking statements that involve risks and uncertainties. Actual results may be materially different from those contained in such forward-looking statements. The market for the company's products is characterized by rapidly changing technology, evolving industry standards, frequent product introductions,

new product introductions, emerging competitors and significant price competition. In the event that the company is unsuccessful in maintaining its market position or historic price margins, its results of operations will be adversely affected. Additional information concerning factors that could adversely affect the company's results are contained in the company's filings with the securities regulatory authority.

Id. at 442. In dismissing the claim for misleading forward-looking statements, the court noted

that the above cautionary language "conveyed to investors the uncertainty of [the] projections,"

and that the "identified specific risk factors" in the warning "are the very ones plaintiffs identify

in the complaint as coming to pass." Id. Therefore, given these warnings, the court found that

"any reasonable investor would have inquired further before accepting the company's

projections, and discounted the importance of the projections when deciding whether to buy the

stock." Id.

Similarly, in Harris v. Ivax Corp., 182 F.3d 799, 800-02 (11th Cir. 1999), the plaintiffs

alleged that two press releases issued by the defendant company contained material

misstatements and omissions. The press releases stated that while the company had some

ongoing problems, it was optimistic for the future. Id. Affirming the district court's dismissal,

the Eleventh Circuit held that the following cautionary language was sufficient to put the

defendants under the PSLRA's safe harbor provision:

Statements made in this press release, including those relating to expectations of increased reorders, receipt of a credit facility waiver, earnings distribution, and the generic drug industry, are forward-looking and are made pursuant to the safe harbor provisions of the Securities Litigation Reform Act of 1995. Such statements involve risks and uncertainties which may cause results to differ materially from those set forth in these statements. Among other things, additional competition from existing and new competitors will impact reorders; the credit facility waiver is subject to the discretion of the bank syndicate; and IVAX's ability to distribute earnings more evenly over future quarters is subject to industry practices and purchasing decisions by existing and potential customers. In addition, the U.S. generic drug industry is highly price competitive, with pricing determined by many factors, including the number and timing of product introductions. Although the price of a generic product generally declines

> over time as competitors introduce additional versions of the product, the actual degree and timing of price competition is not predictable. In addition to the factors set forth elsewhere in this release, the economic, competitive, governmental, technological and other factors identified in IVAX's filing with the Securities and Exchange Commission, could affect the forward-looking statements contained in this press release.

Id. at 807, 810, 813. The court noted that the above cautionary language "is detailed and informative; it tells the reader in detail what kind of misfortunes could befall the company and what the effect could be." Id. at 807. The court also noted that the cautionary statement need not mention every risk faced by the company. Id. Instead, the court noted that "when an investor has been warned of the risks of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it, according to her own preferences for risk and reward." Id.

Likewise, in Johnson v. Tellabs, Inc., – F. Supp. 2d –, 2003 WL 21183390, at *1-2 (N.D. Ill. May 19, 2003), the plaintiff alleged that the defendant misrepresented its "future earnings and operations" in forward-looking statements, which resulted in "artificial inflation of [its] stock." Among the forward-looking statements was a projection of an "estimated 30% sales growth" for the year. Id. At 13. Granting the defendants' motion to dismiss, the Court found that the following cautionary statement was sufficient under the PLSRA's safe harbor:

> Forward-Looking Statements--This news release contains forward-looking statements that involve risks and uncertainties. Actual results may differ from the results discussed in the forward-looking statements. Factors that might cause such a difference include, but are not limited to, risks associated with introducing new products, entering new markets, availability of resources, competitive response, and a downturn in the telecommunications industry. The company undertakes no obligation to revise or update these forward-looking statements to reflect events or circumstances after today or to reflect the occurrence of unanticipated events. For a more detailed description of the risk facts, please refer to the company's SEC filings.

Id. at *13-14. The court noted that the above cautionary language and similar language

incorporated into oral statements to the media "clearly falls within the PLSRA's safe harbor provision" because "[i]t specifically identifies risks that could affect the projections." Id. at 15.

Accordingly, this Court finds that Baxter's cautionary statements are sufficiently tailored to the forward-looking projections, and therefore, pursuant to 15 U.S.C. § 78u-5(c)(1)(A) and 15 U.S.C. § 77z-2(c)(1)(A), this Court dismisses the claims as they related to Baxter's press releases and statements filed with the SEC.

The Court, however, must still address the two oral statements in which Defendant Kraemer reiterated Baxter's rosy 2002 predictions in two interviews with the media, where he stated that he thought "the overall financial dynamic for Baxter is very strong" for 2002 and that despite the problems with the Renal Division, he believed that in 2002 "the sales growth would be in the high single digits" in 2002 and in the "low double digits" in 2003 and 2004. (Compl. at ¶¶ 43, 47.) The first statement – that "the overall financial dynamic for Baxter is very strong" – is mere "puffery" and thus not an actionable misstatement. See Johnson, 2003 WL 21183390, at *12 ("mere puffery and flowing representations of expected boom are not enough to state claims under the Exchange Act"). The second statement, which as discussed above constitutes a misstatement or omission of material fact, was, as Defendants admit, not accompanied by an "explicit cautionary statement[]."[8] (Defs' Reply at 16 n.7.)

Defendants, however, contend that, because this statement was made the day after Baxter filed its 2001 Form 10-K, which, as explained above, contains sufficient cautionary language, a reasonable investor would have been alterted to the risks of investing in Baxter. As explained

---

[8]    The Court notes that it was not provided with a full transcript of the statements to the media. Therefore, for the purposes of this opinion, the Court will assume that these oral statements were not accompanied by cautionary language and did not refer to any other documents which contained cautionary language.

above, under both the safe harbor provision and the "bespeaks caution doctrine," in determining

whether the defendant has put forth sufficient cautionary language with its forward-looking

statements, courts examine "the total information mix of information available to investors at the

time of the alleged fraudulent statements." Stavros, 2003 WL 21372468, at *8. Therefore,

because the oral statement was made the day after Baxter filed its 2001 10-K, this Court finds

that a reasonable investor would have been alterted to the dangers of investing in Baxter stock

and thus, that the March 14, 2002 oral statement also falls within the protections of the PLSRA's

cautionary safe harbor provision.[9]

---

[9]    Because the Court finds that the forward-looking statements contain sufficient cautionary
language to protect these statements under the PLSRA's safe harbor provision, the Court will not
discuss the other arguments raised in Defendants' motion.

## CONCLUSION

For the reasons discussed, the Baxter Defendants' Motion to Dismiss [25-1] is

GRANTED.

ENTER:

_Blanche M. Manning_
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: _7-17-03_